NOT FOR PUBLICATION                              [Docket No. 1]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

```
                              :
In the matter of             :
                              :    Civil No. 07-5417 (RMB)
Peter Richmond,              :
                              :
          Debtor.            :    OPINION
                              :
                              :
```

APPEARANCES:

Brian Douglas Schwartz, Esquire
Craner, Satkin & Scheer, P.A.
320 Park Avenue
P.O. Box 367
Scotch Plains, New Jersey 07076
(908)322-2333
      Attorneys for Plaintiff

Jill M. Tribulas, Esquire
Sentry Office Plaza, Suite 604
216 Haddon Avenue
Westmont, New Jersey  08108
856-858-1011
      Attorney for Defendant

**BUMB**, United States District Judge:

      This matter comes before the Court upon the appeal by Marina

District Development Co., LLC, t/a Borgata ("the Borgata") of the

Bankruptcy Court's Order overruling the Borgata's objection to

the confirmation of the debtor Peter Richmond's (the "Debtor")

proposed Chapter 13 plan (the "Plan").

<u>Factual Background</u>

On August 17, 2006, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code.  The Debtor scheduled no real property or secured claims, but listed $250,997.53 in unsecured debt.  The Debtor listed three unsecured creditors: his mother, a timeshare and the Borgata.

At the time of the filing the Debtor was retired; he had not worked since 1996.  His sole sources of income at the time of the filing were from (1) an investment in Mexican slot machines and (2) the repayment of a secured loan made to Joseph Sciarrino. Specifically, in 2001 or 2002 the Debtor had invested $50,000 in the Mexican slot machines through Ong Development.  The Debtor testified before the Bankruptcy Court that he receives monthly payments averaging $250 per month.  He testified that the monthly payments had ranged from a high of $2,400 a month at the outset of the investment to zero during some months in 2006.  As for the loan repayment income, the Debtor had lent Sciarrino several thousand dollars in 2002, and Sciarrino gave him a second mortgage on his condominium to secure repayment.  The Debtor testified before the Bankruptcy Court that he receives $403 per month, although the payments are not always timely.

On December 1, 2006, the Borgata filed an unsecured proof of claim in the amount of $191,677.53 supported by a default judgment entered on March 13, 2006, against the Debtor in the New

2

Jersey Superior Court, Law Division, Dkt. No. ATL-L-7862-05.  The
Borgata was the only creditor that filed a proof of claim.

The Debtor's first Chapter 13 plan proposed to pay $350 a
month for 36 months, to pay attorney's fees of $2,000, and to
provide $11,340 for the unsecured creditors to share pro rata.
The Debtor thereafter filed an amended plan proposing to pay $653
per month for 60 months to pay attorney's fees and unsecured
creditors pro rata.

At the first meeting of creditors, the Debtor was advised by
the Chapter 13 trustee to amend his schedules to disclose his
gambling losses, his interest in certain slot machines and to
list his pre-petition transfers.  In an amended Statement of
Financial Affairs, the Debtor indicated that he had sustained
gambling losses of approximately $175,000 from August 2005
through August 2006.  The Debtor also disclosed the transfer of
two separate properties in which he had held an interest more
than two years prior to his petition filing date: 1) on May 18,
2004, he transferred his interest in the marital residence,
located in Ventnor, New Jersey, valued at $200,000, to his wife,
Barbara Klein-Richmond, for consideration of $1.00, and 2) on
June 9, 2004, the Debtor also sold property he owned in Las
Vegas, Nevada, to an unrelated third party, Robert B. Stuart, for
$175,000 taking back a mortgage.  The mortgage was paid off in
2005.

On December 12, 2006, the Borgata filed an objection to the

Debtor's proposed plan and also sought dismissal of the Debtor's case.  The Borgata (1) asserted the non-dischargeability of its claim, (2) objected to confirmation, (3) claimed that the transfer of the marital property was a fraudulent conveyance, and (4) sought to dismiss the case as a bad faith filing.  In addition, the Borgata claimed that the Plan was not proposed in good faith, and that the Debtor was unable to make all of his payments under the Plan.

In connection with the confirmation of the Plan, the Bankruptcy Court heard testimony on April 10, 2007, and May 2, 2007.  On October 4, 2007, the Honorable Judith H. Wizmur rejected the Borgata's arguments in a written Opinion.  On October 16, 2007, Judge Wizmur entered an Order overruling the Borgata's objection to confirmation of the Plan and denied the Borgata's motion to dismiss the case as a bad faith filing.

The Borgata appeals Judge Wizmur's Order on the basis that she improperly applied the law to the uncontested facts, particularly relating to the transfer of Debtor's interest in the marital home.  The Borgata also argues that the Bankruptcy Court reached the improper conclusion that no fraudulent conveyance occurred, and that the Debtor's petition was filed in good faith. Finally, the Borgata claims that the Bankruptcy Court made factual findings related to the Debtor's Plan and his conduct prior to and subsequent to the filing of the bankruptcy petition that were clearly erroneous.

Legal Standard

An appellate review of a bankruptcy court's factual findings is performed under a "clearly erroneous" standard.  In re F/S Anlease II, Inc., 844 F. 2d 99. 103 (3d Cir. 1988).  Findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy judge to judge the credibility of the witnesses."  Bankr. Rule 8013.  A finding is considered "clearly erroneous" when, "although there is evidence to support it, the viewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."  In re Johns Manville Corporation, 68 B.R. 155 (S.D.N.Y. 1986) (quoting U.S. v. U.S. Gypsum Co., 33 U.S. 364, 395 (1948)).  As to the issues that relate to the bankruptcy judge's application of the law to undisputed facts, those conclusions are "subject to plenary review."  In re Johns Manville, supra, 68 B.R. at 158.

Analysis

1.  Speculative Income

The first argument that the Borgata makes on appeal is that the Bankruptcy Court erred in determining that the Debtor's income was sufficient and not too speculative to merit confirmation of the Plan.  Specifically, the Borgata argues that the Bankruptcy Court erred because the Plan relies on the Debtor receiving repayment of the Sciarinno promissory note, and those payments have been late.  The Debtor also relies upon payments

from his slot machines investment, and those payments have been getting "smaller." App. Br. at 9.

The Borgata also takes issue with the fact that, although the Debtor testified that he would rely on his "wonderful wife" to help him through the times when the foregoing monies were slow, the Bankruptcy Court erred in not hearing testimony or obtaining any sworn statement from the Debtor's wife at the hearing.

This Court disagrees with the Borgata's arguments. Section 1325(a)(30) of the Bankruptcy Code provides that the Bankruptcy Court may not approve a plan <u>unless</u> "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). As the Bankruptcy Court correctly held, "[t]he Debtor bears the burden of proof in establishing the ability to make the payments needed under the plan and must provide a sufficient factual basis for the court to determine both the regular both the regularity and stability of the income." <u>See</u> Opn., at 8 (<u>quoting</u> <u>In re Mullins</u>, 360 B.R. 493, 499 (Bankr. W.D.Va. 2007)).

The Bankruptcy Court clearly considered the fact that the monies the Debtor was receiving from his investment in the Mexican slot machines and from the repayment of the Sciarrino secured loan were becoming smaller and were not always timely, respectively. Nevertheless, the Bankruptcy Court found that these payments were made regularly. Moreover, the Bankruptcy

Court considered the fact that the primary source of the funds
used by the Debtor to meet household expenses and to make Plan
payments was from the Debtor's wife.  The evidence in the record
before the Bankruptcy Court was that, at least since early 2006,
Mrs. Richmond had been providing for the Debtor's support.  The
Bankruptcy Court rightly found that

> [t]he most significant indicator of the debtor's
> ability to make plan payments is the fact that the
> debtor has consistently make all of his pre-
> confirmation payments to the Chapter 13 trustee.  The
> debtor made payments of $350 a month from September
> 2006 through February 2007, and in March 2007, after
> filing his amended Chapter 13 plan, he began making the
> increased payments of $653.00 per month.

Bankr. Op. at 10.  Quite notably, the Borgata did not dispute
these findings.  As the Bankruptcy Court held, the Debtor's Plan
payment history provided a sufficient basis to demonstrate the
Debtor's ability to continue to make his Plan payments.  See id.
at 10.  This Court agrees and holds that the findings and
conclusion by the Bankruptcy Court were not clearly erroneous.

    2.   <u>Bad Faith</u>

        a) Plan Filing

        The Borgata also argues that the Bankruptcy Court erred
in determining that the Debtor's Plan was proposed in good faith.
The Borgata argues that the Bankruptcy Court erred in confirming
the Plan despite the totality of circumstances militating a
contrary result.  Specifically, the Borgata points to the
following facts:

1.     That the Debtor waited 2 years and 2 weeks after transferring his interest in the marital home to his wife to file the petition, thereby falling outside the two year window for fraudulent conveyance;

2.     During the year prior to his filing, the Debtor disposed of over $100,000 in joint accounts between he and his wife in ways that he could not explain;

3.     The Debtor has made no effort to obtain employment even though he has a financial background;

4.     The Debtor failed to disclose on his petition the transfer of his interest in his marital home; the payment to him and his wife of the $175,000 mortgage on the Las Vegas property; and the $36,767 of cash equity the Debtor possessed in his life insurance policy.

This Court does not find that Judge Wizmur's findings were clearly erroneous.  Section 1325(a)(3) requires that a debtor's Chapter 13 plan be "proposed in good faith and not be in any means forbidden by law."  11 U.S.C. § 1325(a)(3).  See In Re Tarnecki, 229 F.3d 205, 209 n.1 (3d Cir. 2000) ("The Bankruptcy Code does require that repayment or reorganization plans . . . be proposed in good faith.")  Other than the Borgata's insinuation that there was something sinister about the Debtor filing his petition two years and two weeks beyond the time of the conveyance of the marital home, the record is devoid of any evidence that the Plan was proposed in bad faith.  To the contrary, the Bankruptcy Court held that the Plan was funded primarily from the Debtor's spouse's monthly income, and, contrary to the Borgata's position, the Debtor's self-proclaimed

gambling addiction has not impacted his ability to make his Plan
payments over the last twelve months prior to a ruling.
Moreover, the Debtor did amend the schedules to reflect the
transfer of interest in the marital home, although the transfer
occurred more than two years prior to the filing of the petition.
The Bankruptcy Court highlighted the fact that the amount of the
payment proposed by the Debtor in his amended Plan was greater
than the amount of monthly disposable income reflected on Form
B22, and was proposed to be paid for the requisite 60 months.
The Bankruptcy Court correctly held that these indicia reflect
the "debtor's sincerity in petitioning for Chapter 13 relief."[1]

      b)   Filing of Chapter 13 Case

      Finally, the Borgata argues that the Bankruptcy Court
erred in determining that the Debtor filed his bankruptcy
petition in good faith.   The Court similarly rejects these
arguments.  Section 1307(c) of the Bankruptcy Code provides that
a Chapter 13 case may be dismissed "for cause."  Although the
phrase "for cause" is undefined in the statute, "cause" most
likely includes a lack of good faith in filing the case."  <u>See</u>
<u>Marrama v. Citizens Bank of Mass.</u>**,** 127 S. Ct. 1105, 1111 (2007)
("Bankruptcy courts . . . routinely treat dismissal for pre-

---

[1] The Borgata also argues that the Debtor was unable to
explain at the Bankruptcy Court hearings how the money was
dissipated from his $400,000 in joint accounts between him and
his wife.  This, however, goes to the argument that the Debtor
filed his Chapter 13 case, rather than the Plan, in bad faith.
This issue is discussed <u>infra</u>.

petition bad-faith conduct as implicitly authorized by the words 'for cause'".); see also In re Myers, 491 F.3d 120, 125 (3d Cir. 2007).

The Borgata argues that the timing of the petition was designed to skirt the two-year reporting requirement of property transfer so that the Bankruptcy Court and the trustee would be unaware of the Debtor's transfer of his interest in the marital home for $1.00. More specifically, the Borgata argues that the Debtor would have gotten away with this conduct had the Borgata's attorneys not discovered the transfer. While the Borgata concedes that the Debtor was making payments, it argues that the Debtor's motivation in making these payments was not to pay off the debt, but rather to delay the Borgata's obtaining a judgment against it so that he could file for bankruptcy more than two years after the transfer.

This Court cannot find that the Bankruptcy Court's finding that the Debtor filed this case "in an honest effort to repay [Borgata]", Op. at 28, was clearly erroneous. The Bankruptcy Court considered the history of how the Debtor incurred a gambling debt of $220,000 owed to the Borgata. Of relevance to the Bankruptcy Court's decision was the Debtor's willingness to make payments to the Borgata. Specifically, in December of 2004, as the Debtor testified, he contacted the Borgata and offered to make payments of $5,000 a month to satisfy his debt. He then made payments to the Borgata of $5,000 a month for seven months,

10

from January 2005 through July 2005, a fact not disputed by the Borgata.  By August or September of 2005, as a result of his continuing gambling, the Debtor determined he was no longer able to continue making the $5,000 monthly payments and thus offered to make payments to the Borgata of $1,000 a month until he was financially able to return to the $5,000 amount.  The Borgata, however, declined to accept his payment arrangement and sent the matter to collection.  Thus, the record before this Court demonstrates that the Debtor did not seek to avoid the debt, but rather sought to pay reduction of the monthly payment.  While the Bankruptcy Court acknowledged, and as the Borgata stresses, that there are some "badges of fraud" present, the transfer of the marital residence occurred prior to the incurring of the new debt to the Borgata and resulted in partial satisfaction of the Debtor's prior outstanding debt - a "quid pro quo for the transaction."  Op. at 21.  Despite the Borgata's repeated emphasis of the fact that the property was transferred over two years prior to the filing and that the money from the transfer entered a joint account, it ignores the legitimate points made by the Bankruptcy Court: that the transfer occurred prior to the accrual of a new debt, that the money was used to satisfy the previous claim, and the debtor made an attempt to repay by making payments of $5,000 for seven months.  Thus, the Court did not err in finding that the payment was inconsistent with an actual intent to defraud and it did not render the Debtor insolvent.

11

In sum, there is nothing in the record to convince this Court that the Bankruptcy Court erred; as the Bankruptcy Court found, there was nothing in the record supporting the argument that the Debtor had not been forthcoming with the Bankruptcy Court.  The pre-petition transfers all occurred prior to the two year period prior to filing.  When requested to do so, the Debtor amended his schedules.  Although the Borgata has argued at length that the Debtor intentionally waited for the two year period to pass, that argument has little weight because, during that time, the Debtor continued to make payments to the Borgata.

Accordingly, for all these reasons, the Court denies the appeal.  An appropriate Order will follow.


Dated: <u>February 29, 2008</u>          <u>s/Renée Marie Bumb</u>
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE